UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
WILLIAM L. MCCOY,

              Petitioner,        <u>MEMORANDUM AND ORDER</u>

    -v-                       21-CV-2924 (JS)

NEW YORK STATE DEPARTMENT
OF CORRECTIONS AND COMMUNITY
SUPERVISION,

              Respondent.
------------------------------------X
APPEARANCES

For Petitioner:    William L. McCoy, <u>Pro Se</u>
                  25 Melville Park Road, Suite 207A
                  Melville, New York  11747

For Respondent:    Joyce A. Smith, Esq.
                  Acting District Attorney, Nassau County
                  262 Old Country Road
                  Mineola, New York  11501

SEYBERT, District Judge:

        Following a jury trial in 2018,[1] Petitioner William L. McCoy (hereinafter, "McCoy" or "Petitioner") was convicted of one count of Grand Larceny in the Third Degree (New York Penal Law {"Penal Law"} § 155.40) and one count of Scheme to Defraud in the First Degree.  (Trial Tr. at 1304.)  He was sentenced to two concurrent terms of imprisonment: three to nine years on the count

_____

[1]  Petitioner's state court jury trial took place from February 1 through 13, 2018.  The consecutively paginated trial transcript is available in the Case Docket and will be referenced herein as "Trial Tr." followed by a page number. (<u>See</u> ECF Nos. 9-1, 9-2.)

of Grand Larceny in the Second Degree and one-and-a-third to four years on the count of Scheme to Defraud in the First Degree. (Sent'g Tr., ECF No. 10-7, at 23.)  The trial court also imposed a fine of $5,000 and other applicable surcharges.  (Id. at 24.)

Presently before the Court is McCoy's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254") (hereafter, the "Petitioner"), in which he raises three grounds for habeas relief: (1) the indictment and grand jury proceedings were deficient; (2) the conviction was not supported by legally sufficient evidence; and (3) ineffective assistance of trial counsel. (Pet., ECF No. 1, at 4-10.)  While Petitioner is not presently in custody, at the time he filed his Petition, he was incarcerated on the conviction from which he seeks habeas relief. For the reasons articulated herein, the Petition is DENIED in its entirety, and the case is dismissed.

<u>BACKGROUND</u>

I.    <u>The Offense and Trial</u>

Petitioner's indictment by a grand jury and his subsequent conviction resulted from misappropriation of funds entrusted to him for a business transaction in which Petitioner falsely represented himself as an attorney.  More specifically, in 2014, misrepresenting himself as an attorney, McCoy was hired by Ryan Cooke to represent Cooke in a business deal, <u>to wit</u>, purchasing a party boat business from Frank and Elsie Rizzo,

Cooke's former part-time employers (hereafter, the "Business Transaction"). (Trial Tr. at 286-88, 291, 297, 376-85.)  In further pursuit of the Business Transaction, Petitioner also pretended to be an attorney to Sema and Allen Blatter; Seam was Cooke's former colleague and Allen was her husband.  The Blatters provided Petitioner with $200,000, which was the down payment for the purchase of a boat (hereafter, the "Down Payment"), which was part of the Business Transaction; in exchange, the Blatters were to receive a 25% share in business profits generated from the party boat business. (Id. at 290, 301-04, 313, 318, 320, 354, 522, 565.) Like Cooke, the Blatters believed the Down Payment would be placed in Petitioner's escrow account.  (Id. at 525-27, 583, 607, 634-35, 637.)  Instead, Petitioner placed the funds in a regular business checking account, which he nicknamed "escrow" (hereafter, the "Nicknamed Account") and from which he then withdrew and spent funds without permission from Cooke or the Blatters and on items other than for the Business Transaction.  (Id. at 535, 536, 581, 598, 610, 650.)

On March 5, 2015, the original closing date for the Business Transaction, and the day when the Business Transaction could not be completed, Cooke and the Blatters learned Petitioner had used money from the Down Payment since the Nicknamed Account was missing $192,000 necessary for the closing.  (Id. at 334-37, 356-60, 543-47, 614, 720-21, 800-03.)  When it became clear money

was missing, Cooke contacted Petitioner, who explained the Nicknamed Account was short $192,000 because of the "monies that were being paid for the liquor license and to TD Bank." (Id. at 337, 458, 547, 580, 616-20.) Thereafter, a new closing date was scheduled; however, after a series of emails, McCoy indicated to Cooke that there had "been no representation that" the $192,000 check would be available to him to pick up. (Id. at 341-48, 722, 805-11.) Nevertheless, the Business Transaction closed, with Cooke assuming responsibility for a $192,000 note to be paid to the Rizzos. (Id. at 352, 355-56.) Thereafter, Cooke also reached out to the District's Attorney office. (Id.)

Despite his repeated assurances, Petitioner failed to produce the $192,000 to Cooke or the Blatters; therefore, in May 2015, they commenced a civil action against McCoy and, thereafter, contacted the District Attorney's office. (Id. at 350-56, 423, 549.) Notably, because Petitioner was not an attorney, Cooke and the Blatters were unable to secure reimbursement for the missing $192,000 from the New York State fund set up to reimburse clients in cases of unreturned escrow money. (Id. at 814.)

In addition to the trial testimonies from Cooke, the Blatters, and Rizzos' attorney, at the 2018 trial of Petitioner, the prosecution presented documentary evidence of Petitioner's small business checking account at Capital One Bank, i.e., the Nicknamed Account. (Id. at 673-74, 681-82.) Despite its label,

4

the Nicknamed Account was not actually an escrow account. (Id. at 674-75, 671-82.) Yet, Petitioner did have a true escrow account at Citibank, which he opened without providing any proof of being an attorney, since Citibank had no such requirement. (Id. at 659-60.)

The prosecution also presented testimony from an investigative accountant who analyzed Petitioner's various accounts. (Id. at 860-61.) According to this testimony, Petitioner deposited a $200,000 check from the Blatters, i.e., the Down Payment, into his Nicknamed Account on July 9, 2014, which brought the total in said Account to $197,709.70, since it had been in arrears prior to the deposit of the Down Payment. (Id. at 860-61.) After that, Petitioner made a series of payments from the Nicknamed Account unrelated to the Business Transaction, such as for his past-due rent and utilities, and transferred money to another account, including the one he used for payroll. (Id. at 861-90.)

The jury also heard testimony from an expert in "professional ethics, including escrow agreements and escrow agents." (Id. at 891-98.) The expert testified extensively regarding the fiduciary duties of an escrow agent with respect to monies in an escrow account, i.e., that an escrow agent or attorney is prohibited from using escrow account monies to pay his or her agent fees; and, when the balance in an escrow account falls below

the sum deposited into that account, such an event constitutes an impermissible conversion of funds. (Id. at 899-904.) Furthermore, the expert testified that a law school graduate not licensed to practice law, such as McCoy, is not permitted to refer to himself as an attorney or to even use words like "lawyer", "attorney at law", "counselor at law" or "trained lawyer" to refer to himself. (Id. at 905.)

McCoy testified in his own defense, telling the jury he worked for several years in accounting firms before attending law school, and he was an "attorney by training and profession" but failed the bar exam and was not "attorney at law who practices." (Id. at 987-90; 1071-74.) He described his business as a "one-stop shop" for professional services. (Id. at 991-93.) McCoy denied he represented himself to Cooke or the Blatters as an attorney (id. at 990); yet, he insisted he could "call [himself] an attorney". (Id. at 1156-57.) Nevertheless, McCoy confirmed he displayed his law school diploma in his office, and the website of his consulting firm described him as a "tax attorney". (Id. at 1077-79.)

As to the $200,000 Down Payment, McCoy confirmed he received a check for the Blatters for that sum and placed it in his "business account" as "escrow funds" (id. at 1092-93, 1099), but insisted he withdrew monies only after Cooke gave him permission to use a portion of those escrow funds to pay himself.

6

(Id. at 1046-63.)  McCoy testified the Nicknamed Account was "not a fake escrow account" while also not a "real escrow account", but a "business account with a legitimate legal nickname called Escrow." (Id. at 1102.)  Furthermore, among other things, McCoy insisted he: was to keep the monies in escrow until "they were needed for something" despite the terms of the written escrow agreement defining its use (id. at 1093); was "entitled to a portion of those funds for [his] fees" (id. at 1094-98, 1111); and, did not need written permission to deduct his fees from the Nicknamed Account since Cooke gave him verbal permission to do so. (Id. at 1111-1114.)  Petitioner admitted he paid various personal expenses with the monies in the Nicknamed Account, and he never sent any written invoices to Cooke or the Blatters before the March 2015 closing date. (Id. at 1104-06, 1110-11, 1116-20, 1128.) McCoy acknowledged: in February 2015, via email, he indicated the proof of $192,000 needed for closing was the deposit of the money in the Nicknamed Account; by March 2015, the Nicknamed Account was in arrears, a fact he did not communicate to either Cooke or the Blatters (id. at 1132, 1165-66, 1169); and, after the failed March 2015 closing, in an email, he indicated the parties were still "good" concerning the needed $192,000 and could reschedule the closing (id. at 1138-39).

At the close of the prosecution's case, Petitioner moved for a dismissal, arguing the prosecution did not make out its

"prima facie case"; he renewed his dismissal motion at the close of his defense. (Id. at 914-15, 1179.) The trial court denied both motions. (Id. at 915, 1179-80.) On the prosecution's request and over the defense's objection, the trial court charged the jury on larceny embezzlement and larceny by false pretenses. (Id. at 1168-69, 1154.) The court also sua sponte charged the jury on the "claim of right" defense. (Id. at 1154-55, 1284-85.) The jury found Petitioner guilty on both counts of the indictment. (Id. at 1299-1306.)

## II.  Post-Trial State Court Proceedings

After the trial, represented by new counsel, McCoy moved to set aside the verdict, listing multiple instances of purported ineffective assistance by his trial counsel, to wit: (1) failure to object to leading questions; (2) asking confusing questions and questions contrary to the defense theory; (3) failure to prepare defense witnesses for their testimony; (4) failure to prepare for the charging conference: and (5) failure to investigate. (Mot. to Set Aside Verdict, ECF No. 9-3, at 8-15.) The trial court denied the motion without a hearing, finding "counsel logically attempted to disprove elements of the charged crimes through cross-examination," and the "claimed deficiencies in counsel's performance d[id] not undercut the conclusion that defendant received meaningful representation." (June 15, 2018 Sup. Ct. Order, ECF No. 9-6, at 4-5.)

8

On June 29, 2018, the trial court sentenced McCoy to two concurrent indeterminate terms of imprisonment of three to nine years on the grand larceny count and one-and-one-third to four years on the scheme to defraud count. (Sent'g Tr. at 23.) Additionally, the trial court imposed a $5,000 fine and related surcharges. (Id. at 23-24.)

III. <u>State Habeas Petition</u>

While his direct appeal was pending before the Appellate Division, Second Department, appearing <u>pro se</u>, McCoy petitioned the state court for a writ of habeas corpus. (<u>See</u> State Habeas Pet., ECF No. 9-8.) In his state habeas petition, Petitioner claimed: (1) his indictment was unlawfully procured; (2) the indictment was deficient; (3) the grand jury proceedings were "fatally impaired" and prejudicial; and (4) the verdict was not supported by legally sufficient evidence. (<u>Id.</u> at 1-2.) Altogether, McCoy claimed he suffered violations of his statutory and constitutional rights, which "strip[ed] the trial court entirely of jurisdiction to render judgment of conviction and impose sentence upon [him]." (<u>Id.</u> at 2.) The state court denied that habeas petition, finding "Petitioner has not presented any such facts or circumstances to justify the relief he requests." (Apr. 5th, 2019 Sup. Ct. Order, ECF No. 9-10, at 3.)

McCoy appealed from the denial of his state habeas petition to the Appellate Division, Fourth Department. (<u>See</u> ECF

No. 9-11.)  Through appointed counsel, McCoy argued both that the
trial evidence did not establish his guilt and that he was denied
his constitutional right to effective assistance of counsel.  (4th
Dept. Appellant's Br., ECF No. 9-13, at 6-8, 14-72.)  The Fourth
Department denied Petitioner's appeal and affirmed his conviction.
See People ex rel. McCoy v. People, 189 A.D.3d 2154, 134 N.Y.S.3d
885 (N.Y. App. Div., 4th Dept. 2020).  The Court of Appeals
subsequently denied leave to appeal.  See People ex rel. McCoy v.
People, 36 N.Y.3d 911, 167 N.E.3d 1293 (2021).

IV.  Direct Appeal

Petitioner sought direct appeal from his conviction
before the Appellate Division, Second Department, in which he
argued: (1) the evidence was not sufficient to disprove his claim
of right defense; (2) the evidence was not legally sufficient to
support conviction on either count of the indictment; (3) the
verdict was entered against the weight of the evidence; (4) the
trial court erred in denying his motion to set aside verdict
without a hearing; and (5) he received ineffective assistance of
counsel. (2d Dept. Appellant's Br., ECF No. 9-15, at 36-52.)  The
Second Department denied McCoy's appeal and affirmed the judgment
of conviction.  See People v. McCoy, 188 A.D.3d 1262, 1262-63, 132
N.Y.S.3d 839, 839-40 (N.Y. App. Div., 2d Dept. 2020).  Even though
McCoy's claims regarding the legal sufficiency of the evidence
supporting his convictions was not preserved for the appellate

review, the Second Department proceeded:  "Upon reviewing the record here, we are satisfied that the verdict of guilt was not against the weight of the evidence." Id. at 1262.  However, as to McCoy's claim he was denied effective assistance of counsel, the court determined said claim was a "mixed claim of ineffective assistance" since part of the claim was based upon facts outside of the record; therefore, the appropriate mechanism to pursue said claims was Criminal Procedure Law ("C.P.L.") § 440.10.  See id. at 1262-63.  Finally, the Second Department summarily found the trial court properly denied McCoy's motion to set aside verdict without a hearing and that his sentence was not excessive.  See id. at 1263.  Thereafter, the Court of Appeals denied leave to appeal, in which application McCoy raised the issues of ineffective assistance only.  See People v. McCoy, 36 N.Y.3d 1058, 165 N.E.3d 702 (2021).

V.    Procedural History of the Instant Action

Petitioner timely filed the instant Petition.  (Pet., ECF No. 1.)  Here, McCoy argues: (1) the state indictment was defective with regard to the grand larceny charge since it failed to allege facts constituting each element of the crime, and the prosecution failed to instruct the grand jury on the "claim of right" defense claimed by McCoy, evidence of which he purports to have put forth to the grand jury; (2) the verdict was not supported by legally sufficient evidence; and (3) his counsel was

ineffective. (Id. at 4-10.)  On November 16, 2021, Respondent opposed the Petition.  (Opp'n, ECF No. 9.[2])  Petitioner filed a Reply on July 15, 2022, which Reply was deemed timely and in which he disputes the Respondent's Opposition.  (Reply, ECF No. 10.)

DISCUSSION

I.    The Applicable Law

    A.    Section 2254 Standard of Review

"It is well established that a federal habeas court does not sit to correct a misapplication of state law, unless such misapplication violates the Constitution, laws, or treaties of the United States." Ponnapula v. Spitzer, 297 F.3d 172, 182 (2d Cir. 2002).  Pursuant to 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas court, when considering a claim that was decided on the merits in a state court proceeding, may grant relief only if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or" (2) "based on an unreasonable determination of the facts in light of

---

[2]    For clarity, Respondent's Opposition is comprised of an Affidavit in Opposition (hereafter, the "Opp'n Aff.") (see ECF No. 9 at ECF pp.6-16), and a Memorandum of Law (see id. at ECF pp.17-34).  When referencing the Affidavit, the Court will cite to the relevant paragraph(s), and when referencing the Memorandum, the Court will cite to the relevant page(s).

the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000); see also McBride v. Perez, No. 13-CV-4792, 2015 WL 5245072, at *8 (S.D.N.Y. June 25, 2015) ("'[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States.'") (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)). The requirements set forth by the AEDPA are strictly construed and, by design, establish a barrier to federal habeas relief founded upon the principle that "[s]tate courts are adequate forums for the vindication of federal rights" and are "presumptively competent[] to adjudicate claims arising under the laws of the United States." Burt v. Titlow, 571 U.S. 12, 19 (2013) (internal quotation marks and citation omitted).

Under § 2254(d)(1), a state court decision is considered "contrary to" federal law if it either "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"

13

or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." Williams, 529 U.S. at 405-06.  "'Clearly established Federal law' means 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" Green v. Travis, 414 F.3d 288, 296 (2d Cir. 2005) (quoting Williams, 529 U.S. at 412 (alteration in original)).  By contrast, an "unreasonable application" of federal law occurs where the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Williams, 529 U.S. at 407-08.  "The critical point is that relief is available under § 2254(d)(1)'s unreasonable application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no fairminded disagreement on the question."  White v. Woodall, 572 U.S. 415, 427 (2014) (internal quotation marks and citations omitted).

Furthermore, a state court's determinations of factual matters are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006).  A state court's findings of fact will be upheld "unless objectively unreasonable in light of the evidence presented in the state court proceeding."  Lynn,

443 F.3d at 246–47 (quoting <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003)).  Thus, a federal court may overrule the state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated."  <u>Williams</u>, 529 U.S. at 389.

     B.   <u>Procedural Bars to Federal Habeas Review</u>

       1.   <u>Failure to Exhaust</u>

A habeas petition will not be reviewed by the district court unless "the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A). Exhaustion of state remedies requires a petitioner to "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995) (internal quotation marks and citation omitted; alteration in original).  The state courts must have had "the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding," exhausting with this the state remedies. <u>Picard v. Connor</u>, 404 U.S. 270, 276 (1971).  To accomplish this, a state prisoner must "present the state courts with the same claim he urges upon the federal courts."  <u>Id.</u>

> Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional

15

> claims before those claims are presented to
> the federal courts . . . state prisoners must
> give the state courts one full opportunity to
> resolve any constitutional issues by invoking
> one complete round of the State's established
> appellate review process.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  In New York, a defendant must exhaust his claims by seeking leave to appeal in the New York Court of Appeals.  See Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000).

### 2.    State Procedural Requirements

A federal court "may not review federal claims that were procedurally defaulted in state court — that is, claims that the state court denied based on an adequate and independent state procedural rule."  Davila v. Davis, 582 U.S. 521, 527 (2017); see also Jimenez v. Walker, 458 F.3d 130, 136 (2d Cir. 2006) ("[F]ederal courts may not review the judgment of a state court that 'rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision.'" (quoting Harris v. Reed, 489 U.S. 255, 260 (1989))).  This principle serves to "ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism."  Martinez v. Ryan, 566 U.S. 1, 9 (2012).

A state procedural rule is adequate if it is "firmly established and regularly followed by the state in question."

16

Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (internal quotation marks and citation omitted).  To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "'clearly and expressly' stat[ing] that its judgment rests on a state procedural bar." Harris, 489 U.S. at 261-63, 265 n.12.  Further, a state court's reliance on an independent and adequate procedural bar forecloses habeas review even if the state court also rejected the claim on the merits in the alternative.  See, e.g., id., at 264 n.10 (explaining "a state court need not fear reaching the merits of a federal claim in an alternative holding" where it "explicitly invokes a state procedural bar rule as a separate basis for [its] decision" (emphasis in original)); Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810 n.4 (2d Cir. 2000) ("[W]here a state court says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved."); Nowakowski v. New York, No. 13-CV-3709, 2018 WL 6421056, at *6 (E.D.N.Y. Dec. 6, 2018) (stating "[t]he bar applies even where the state court has also ruled in the alternative on the merits of the federal claim" (internal quotation marks and citation omitted)).

    Notwithstanding the existence of a procedural bar to a claim under state rules, "a federal court may still review the claim on the merits [1] if the petitioner can demonstrate both cause for the default and resulting prejudice, or [2] if he can

demonstrate that the failure to consider the claim will result in a miscarriage of justice." Petronio v. Walsh, 736 F. Supp. 2d 640, 654 (E.D.N.Y. 2010) (citing Coleman v. Thompson, 501 U.S. 722, 749-50 (1991)). As to the cause and resulting prejudice avenue, a "[c]ause may be demonstrated with 'a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . or that 'some interference by state officials' made compliance impracticable, . . . [or that] the procedural default is the result of ineffective assistance of counsel.'" Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986) (citations omitted)).[3] As to prejudice, the petitioner must demonstrate more than "a possibility of prejudice," but rather that the errors below "worked to his actual and substantial disadvantage." Murray, 477 U.S. at 494 (internal quotation marks and citation omitted; emphasis in original).

★★★

Finally, "[t]he Court is mindful that, as with all pro se pleadings, a habeas petition filed pro se is to be construed

---

[3]    Although ineffective assistance of counsel may, in some circumstances, constitute cause for a default, the claim for ineffective assistance "generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" Edwards v. Carpenter, 529 U.S. 446, 452 (2000) (quoting Murray, 477 U.S. at 489); see also Pitre v. Griffin, No. 16-CV-6258, 2016 WL 7442653, at *11 (E.D.N.Y. Dec. 26, 2016) ("[T]he ineffective assistance claim must itself have been exhausted in the state court.").

liberally." Crowder v. Ercole, No. 09-CV-3401, 2012 WL 5386042, at *2 (E.D.N.Y. Nov. 2, 2012) (citation omitted); see also Alonge v. Chappius, No. 12-CV-0542, 2019 WL 1642449, at *6 (E.D.N.Y. Apr. 16, 2019) ("[T]he court must interpret petitioner's pleadings as raising the strongest arguments they suggest"). Pro se status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks and citation omitted).

C. Ineffective Assistance of Counsel Standard

Strickland v. Washington sets forth the relevant federal law governing claims of ineffective assistance of counsel. 466 U.S. 668 (1984). To prevail, a petition must establish (1) the "counsel's performance was deficient" and (2) "that deficient performance prejudiced the defense." Id. at 687. To make out a successful claim, both Strickland factors must be satisfied; a reviewing court is not required to "even address both components of the inquiry if the [petitioner] makes an insufficient showing on one." Id. at 697.

1. The Deficient Performance Factor

"To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S.

at 688).    In evaluating this prong, "the court must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time,' and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 689).    Furthermore, "'[t]he failure of a lawyer to invoke meritless objections cannot constitute constitutionally deficient performance.'"    Parks v. Sheahan, 104 F. Supp. 3d 271, 285 (E.D.N.Y. 2015) (quoting Hicks v. Ercole, No. 09-CV-2531, 2015 WL 1266800, at *23 (S.D.N.Y. Mar. 18, 2015)).

### 2.    The Prejudice Factor

To make a sufficient showing of prejudice, a petitioner:

> must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.    A reasonable probability is a probability sufficient to undermine confidence in the outcome.    In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law.

Strickland, 466 U.S. at 694.

[Remainder of page intentionally left blank.]

***

Furthermore, the "highly deferential <u>Strickland</u> standard is made doubly so on habeas review, as AEDPA requires deference to the state court's ruling." <u>Bogan v. Brandt</u>, No. 11-CV-1550, 2017 WL 2913465, at *9 (E.D.N.Y. July 6, 2017) (internal quotation marks and citations omitted). "Bearing this deferential standard in mind, it is unsurprising that 'the great majority of habeas petitions that allege constitutionally ineffective counsel' fail." <u>Miller v. LeClair</u>, No. 20-CV-1546, 2024 WL 1797341, at *12 (E.D.N.Y. Apr. 25, 2024) (quoting <u>Lindstadt v. Keane</u>, 239 F.3d 191, 199 (2d Cir. 2001)).

## II. <u>Application</u>

Petitioner challenges his state court conviction and sentence on three grounds (Pet. at 4-10.) Specifically, he claims: (1) the indictment for the crime of grand larceny of which he was convicted was defective since it did not allege the facts which constituted each element of the crime, and the prosecutor improperly failed to instruct the grand jury on a "claim-of-right" defense; (2) the verdict was not supported by legally sufficient evidence; and (3) he received ineffective assistance of counsel. (<u>Id.</u>; <u>see also generally</u> Reply.) Petitioner previously raised these claims before various state courts. Respondent opposes the Petition, arguing McCoy's "claims are procedurally barred and, in

21

any event, meritless." (Opp'n Aff. at ¶ 26.)  The Court addresses each claim in order.

A.  Ground One: Claims as to the Indictment and the Grand Jury Proceedings

Petitioner argues the indictment against him was "invalid" because it failed to allege facts in support of each element of the crime of grand larceny. (Pet. at 4-5.)  He also claims the grand jury proceedings, which resulted in the subject indictment, were flawed since the prosecutor did not instruct the grand jury regarding the possible defense available to Petitioner. (Id. at 5.)  The indictment/grand jury claims were previously advanced by Petitioner in his state habeas petition, brought before he had perfected his judgment appeal, and by which petition he argued: "[T]he procedures used to induct, convict and sentence the Petitioner were patently unfair, and constituted an abridgement of [his] constitutional rights to the due process of law." (State Habeas Pet. at ¶5.)  In a sweeping statement to the state habeas court, among other things, McCoy claimed the indictment and grand jury proceedings were deficient because they failed to state the evidence to support each of the element of the crimes of which he was ultimately convicted. (Id.)  The state court denied McCoy's habeas petition. (See ECF No. 9-10.)

In appealing the state court's habeas denial, through counsel, McCoy did not renew his indictment/grand jury claims, but

advanced different claims. (See, e.g., ECF No. 9-13 at ECF p.16.) Hence, the indictment/grand jury claims were not properly exhausted. See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) (instructing a petitioner must "fairly present" his federal constitutional claims to the highest court of the state before a federal court may consider their merits). As Respondent aptly states: "Because [Petitioner] failed to raise these claims before either the Fourth Department or the New York Court of Appeals, the instant claims were not exhausted in state court for federal habeas purposes." (Opp'n at 5.) As such, this Court need not conduct a procedural bar analysis[4] or a merits-based analysis.

More fundamentally, the Court cannot review Petitioner's indictment/grand jury claims because they are not cognizable federal habeas corpus claims. Specifically, "[h]abeas corpus is not available to test the sufficiency of the [state court] indictment." United States ex rel. Mintzer v. Dros, 403 F.2d 42,

---

[4] As Respondent asserts, McCoy's indictment/grand jury claims would be procedurally barred given his failure to exhaust those claims in the state courts. (See Opp'n at 6.) Further, McCoy did not provide any meaningful explanation for said failure, nor proffer the prejudice he would suffer were these claims not reviewed by this Court. (See id. at 6-7; see also Pet. at 4-5; Reply at 10-11.) And, both McCoy's Petition and Reply are devoid of any facts that could be interpreted as demonstrating a constitutional deprivation he suffered since an "'indictment by grand jury is not part of due process of law guaranteed to state criminal defendants by the Fourteenth Amendment.'" Kattis v. Rockwood, No. 19-CV-6916, 2024 WL 2882610, *4 (E.D.N.Y. June 7, 2024) (quoting Branzburg v. Hayes, 408 U.S. 665, 688 n.25 (1972)).

43 (2d Cir.1967) (citing United States ex rel. Tangredi v. Wallack, 343 F.2d 752, 753 (2d Cir.1965) (per curiam).  Moreover, courts in this Circuit recognize claims of deficiencies in state grand jury proceedings are not cognizable in a federal habeas corpus proceeding where, like here, the alleged shortcomings were cured in the court's instructions to the petit jury.  See Lopez v. Riley, 865 F.2d 30, 32-33 (2d Cir. 1989) (holding "claims of impropriety before the grand jury . . . concern[ing] the sufficiency of the evidence, a failure to develop exculpatory evidence by the prosecutor, the presentation of prejudicial evidence and error in explaining the law" were "cured in the trial before the petit jury, which convicted").  Petitioner's argument that Lopez does not apply is without merit in this instance since the trial court, acting sua sponte, provided the jury with the instruction about the "right of claim" defense.  (See Trial Tr. at 1284-85; see also Pet. at 5.)  Therefore, the Court declines to review Petitioner's claims of the alleged deficiencies of the state criminal indictment and grand jury proceedings; as such, McCoy's first ground for habeas relief is unavailing.

> B.    Ground Two: Legal Sufficiency Claim

As he did on direct appeal, Petitioner again claims here: his conviction was not supported by legally sufficient evidence (see Pet. at 5-8); and "[t]he prosecution failed to even address --[l]et alone disprove--Petitioner['s] good faith claim of right"

defense at trial.  (Pet. at 5-6.)  Petitioner's position fails to warrant habeas relief.

Below, addressing Petitioner's claims related to the legal sufficiency of the evidence, the Second Department rejected McCoy's claims that the evidence was insufficient.  See McCoy, 188 A.D.3d at 1262-63.  As an initial matter, the Second Department found Petitioner's sufficiency-of-the-evidence claims unpreserved for appellate review.  See id. at 1262 (citing C.P.L. § 470.05(2)). Nonetheless, it continued, proceeding to view the evidence in the light most favorable to the prosecution, and, upon such review, found the evidence supported Petitioner's conviction.  See id. Hence, the Second Department's decision was dual-based: first, independently based upon state law procedural grounds; and, second, alternatively based upon the merits.  Like the Southern District Vinson Court found, here:

> [i]t is clear from the Second Department's written decision that it actually relied on New York's contemporaneous objection rule in denying this [insufficient-evidence] claim as unpreserved for appellate review.  [People v.] Vinson, [18 A.D.3d 784,] 794 N.Y.S.2d [919,] 920 [(N.Y. App. Div., 2d Dept. May 23, 2005)]. While the court went on to also deny the claim on the merits, the court's primary reliance on the state procedural law constitutes an independent and adequate ground for its decision.  See Harris, 489 U.S. at 264 n.10 (state court decision that relies on a procedural rule to dismiss a claim, but which, in the alternative, also proceeds to dismiss the claim on the merits, relies on the independent state law ground for dismissal);

> Fama v. Comm'r of Corr. Servs., 235 F.3d 804,
> 810 n.4 (2d Cir.2000) (noting that when a
> state court opines that a claim is "not
> preserved for appellate review" and then rules
> "in any event" that the claim also fails on
> its merits, the claim rests on the adequate
> and independent state law rule which precludes
> federal habeas review); see also Wainwright v.
> Sykes, 433 U.S. 72, 86, 97 S. Ct. 2497, 53 L.
> Ed.2d 594 (1977) (contemporaneous objection
> rule constitutes adequate procedural ground
> for dismissal); Bossett v. Walker, 41 F.3d
> 825, 829 n.2 (2d Cir.1994) (same).

Vinson v. Brown, No. 07-CV-2972, 2011 WL 7640001, at *8 (S.D.N.Y.
July 11,2011); see also id. at n.15 (quoting Second Department's
decision, which cited C.P.L. § 470.05(2) to support holding
defendant did not preserve his insufficient-evidence argument for
appellate review; explaining "[t]he court's citation to N.Y. Crim.
Proc. Law § 470.05(2) reveals that it relied on New York's
contemporaneous objection rule"). Thus, as the Vinson Court
determined, this Court is precluded from reviewing McCoy's
insufficient-evidence claims raised as his second ground for
habeas relief. See id. ("Accordingly, this Court is precluded
from further review of [petitioner's insufficient-evidence] Claim
[].");  see also Garvey v. Duncan, 485 F.3d 709, 720 (2d Cir. 2007)
("[B]ecause § 470.05(2) is a state law ground on which the New
York appellate court's decision is based, and that ground is both
independent of any federal question and adequate under firmly
established and regularly followed state law, we will not disturb
the state appellate court's ruling that the defendant's protest at

trial was insufficient to preserve the arguments he wishes to raise on appeal."); see generally Coleman, 501 U.S. at 729. Furthermore, having reviewed the record presented, the Court finds Petitioner provides no arguments nor proffers any facts warranting the overcoming of this procedural bar. See, e.g., Garvey, 485 F.3d at 718-20. Nor, upon the same review, is he able to show prejudice or actual innocence.

While the Court need not reach the merits of Petitioner's insufficient-evidence claim in this instance, like the Second Department, it nevertheless does so. In its alternative holding, the Second Department determined Petitioner's conviction was supported by legally sufficient evidence beyond a reasonable doubt. See McCoy, 188 A.D.3d at 1262. This Court's review of the record evidence yields the same conclusion.

Under the applicable federal standard, evidence is deemed legally sufficient when, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis omitted); see Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002). Petitioner does not allege, and this Court's independent review of the record does not reveal, any facts supporting a conclusion that the state court's finding was contrary to, or involved an unreasonable application of, clearly

27

established federal law.  The evidence adduced at trial was legally sufficient to support Petitioner's conviction of Grand Larceny in the Second Degree in violation of Penal Law § 155.40(1), and Scheme to Defraud in the First Degree in violation of Penal Law § 190.65(1)(b).

As to the Grand Larceny Count:  According to New York Penal Law, a person commits larceny in the second degree when he or she "steals property" the value of which "exceeds fifty thousand dollars."  Penal Law § 155.40(1).  Further, embezzlement, i.e., conversion by one person of a belonging of another person which had been entrusted to the embezzler to hold on behalf of the owner, is one way of committing larceny.  See Penal Law § 155.05(2)(a). One of the defenses to the charge of larceny by embezzlement is that "the property was appropriated under a claim of right made in good faith."  Penal Law § 155.15(1). Here, the prosecution presented evidence establishing the Blatters agreed to provide the $200,000 Down Payment for the Rizzos' party boat business and Petitioner agreed to hold the sum "in escrow" with an understanding that money was required for a down payment.  The escrow agreement executed between the relevant parties stated Petitioner was not to use any of the escrow funds without written permission from all those parties.  Undisputed trial testimony established Petitioner used the "escrow" funds (1) without written permission from those parties and (2) to his own benefit, such as paying to himself his

fees, thereby not being able to provide the necessary Down Payment money at the Business Transaction closing. Review of the trial court record shows the prosecution presented sufficient evidence, via testimony and documentation, to prove beyond a reasonable doubt that Petitioner committed larceny by embezzlement and to disprove any notion of a claim of right on the part of Petitioner.

Additionally, the trial court charged the jury on the theory of larceny by false pretense. Under New York law, a person commits a larceny by false pretense when he "obtain[s] title or possession" of money or property "by means of an intentional false statement concerning a material fact upon which the victim relied in parting with property." Penal Law § 155.05(2)(a). Here, despite Petitioner's insistence otherwise, the prosecution established at trial, with legally sufficient evidence to prove beyond a reasonable doubt, that Petitioner misrepresented himself as an attorney to the parties, and mislead them to believe he was holding the $200,000 Down Payment in a legitimate escrow account.

As to the Scheme to Defraud Count: To prove a crime of Scheme to Defraud in the First Degree, the prosecution had to prove Petitioner (1) intended to defraud or obtain property from more than one person and (2) thereby obtained more than $1,000 from at least one such person. See Penal Law § 190.65(10(b). Here, the evidence presented at trial convincingly established Petitioner fraudulently held himself out as an attorney to Cooke and the

Blatters, received the $200,000 Down Payment from the latter to be held in escrow, and then misappropriated more than $1,000 from the Down Payment for his own benefit.

Hence, even if not procedurally barred, Petitioner's second ground for seeking habeas relief would fail on the merits. Review of the record evidence confirms McCoy's assertion of insufficient evidence rings hallow. Thus, Ground Two is rejected as a basis for granting McCoy's Petition.

C.    Ground Three: Ineffective Assistance of Counsel Claim

As he did on his direct appeal, here, Petitioner argues his counsel was ineffective. (Pet. at. 8-10.) The Second Department found Petitioner's ineffective assistance claims were based, at least in part, on matters outside the record; therefore, such "mixed claim of ineffective assistance" should have been pursued through a motion pursuant to C.P.L. § 440.10 (hereafter, a "§ 440 Motion"). See McCoy, 188 A.D.3d at 1263. Thus, it declined to review on appeal Petitioner's ineffective assistance claim. See id.

The present record does not show Petitioner pursued his ineffective assistance claim via a § 440 Motion, i.e., that he exhausted this claim below. Rather, he proceeds to raise this claim—unexhausted—before this Court. Petitioner premises his claim on two arguments: trial counsel was ineffective given the manner in which he cross-examined witnesses, and trial counsel was

ineffective given his comments made during summation. (Pet. at 8-10.)

As an initial matter: Petitioner's claim of ineffective assistance is unexhausted, as well as procedurally barred from the review by this Court. Regarding the procedural bar: As observed, supra, the Second Department declined to review Petitioner's ineffective assistance claim on the independent and adequate state law ground that, because it was a "mixed claim" based in part on matters outside the trial court record, McCoy was required to pursue his claim via a § 440 Motion, which had not occurred. See McCoy, 188 A.D.3d at 1263. Regarding exhaustion: There is no record evidence Petitioner then pursued his ineffective assistance claim with a § 440.10 Motion. Nor does Petitioner provide cause or prejudice that would warrant overcoming this procedural default. Similarly, Petitioner has not advanced an argument that this Court's failure to review his claims would result in a fundamental miscarriage of justice, e.g., an assertion of actual innocence. Nevertheless, based upon its independent review of the record, the Court finds Petitioner's claim of ineffective assistance is not supported beyond his own assertions and conclusions. As such, and even though the claim is unexhausted, having considered the merits of the claim, upon careful review of the record, the Court finds Petitioner's ineffective assistance claim fails the Strickland standard as Petitioner has not shown counsel's performance was deficient or that the outcome of the underlying trial would have been different but for counsel's alleged shortcomings. Therefore, the ineffective assistance claim is denied, and Petitioner's Ground Three is rejected as a basis for granting habeas relief.

To the extent not explicitly articulated herein, the Court has considered Petitioner's remaining arguments in support of habeas relief, but finds them to be without merit.

CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that the Petition (ECF No. 1) is **DENIED.** The Clerk of the Court is directed to: dismiss the Petition; close the case; and, mail a copy of this Order to Petitioner; and

**IT IS FURTHER ORDERED** that the Court:

I.  Declines to issue a certificate of appealability because Petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2); and

II.  Pursuant to 28 U.S.C. § 1915(a)(3), certifies that any appeal from this Order would not be taken in good faith, and, therefore, in forma pauperis status is denied for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

_/s/_ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:  May 30, 2025
        Central Islip, New York

32